**WORKERS' COMPENSATION APPEAL BOARD (FARRIER), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 15, 2015.
Decided July 17, 2015.

**Scott Lee STARON, d/b/a Lee's Metal Roof Coatings & Painting, Petitioner,**

**v.**

Larry W. Miller, Jr., West Lawn, for petitioner.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Senior Judge ROCHELLE S. FRIEDMAN.

Scott Lee Staron, d/b/a Lee's Metal Roof Coatings & Painting (Employer) petitions for review of the November 6, 2014, order of the Workers' Compensation Appeal Board (WCAB) that affirmed the October 21, 2013, decision of the workers' compensation judge (WCJ) granting Thomas Farrier's (Claimant) claim petition. We affirm.

On October 5, 2011, Claimant filed a claim petition alleging that he sustained a work-related injury while working as a painter for Employer. Employer filed an answer denying an employment relationship.

At a hearing before the WCJ, Employer testified that Claimant first called Employer in response to Employer's advertisement seeking a painter. Claimant told Employer that he had 20 years of experience in painting and roof work, that he had worked for different contractors and had done "a lot of sub work," that he was self-employed and usually did his own work, and that he owned his own truck, tools, and some equipment. Employer and Claimant met and further discussed Claimant's work experience and the terms under which Employer would hire Claimant. They agreed that Employer would pay Claimant $100 per day.[1] Employer also told Claimant that Claimant would need to sign a document in order to work for Employer. (WCJ's Findings of Fact, Nos. 12–13.)

Employer further testified that Claimant started working for Employer on May 3, 2011. Claimant used his own brushes, caulk gun, painter pants, and knee pads, but Employer provided Claimant with ladders and all other necessary equipment. From May 3, 2011, through May 6, 2011, Claimant and Employer met at Employer's home and travelled to the job site together. After instructing Claimant on the first day to clean and paint the front part of the roof, Employer did not give Claimant any additional work directions. Employer fur-

---

1. The WCJ's Findings of Fact Number 13 mistakenly states that "Employer specifically testified that he did agree to pay [Claimant] $12.00 per hour for 40 hours of work per week." However, Employer testified that he did *not* agree to that payment plan. (N.T., 1/9/12, at 71.)

ther testified that he forgot to have Claimant sign the independent/sub-contractor agreement (Agreement)[2] at their initial meeting, but that Claimant signed and dated the Agreement when they met after Claimant's injury and release from the hospital. Employer presented the Agreement, which bears only Claimant's signature and is dated May 6, 2011. (*Id.*, Nos. 14–15, 18.)

Claimant testified that on May 6, 2011, while at the job site, he slipped and fell off of the roof, striking his head on the sidewalk. Claimant was taken by ambulance from the job site to the hospital. Claimant was discharged from the hospital later that day after receiving stitches in his head. (*Id.*, No. 4.)

Claimant further testified that after he left the hospital, he called Employer and made arrangements to pick up his car and tools and to receive payment for his work. Claimant's mother drove Claimant from the hospital to Employer's home, where Employer paid him $300 for his three days of work. Claimant testified that he "might have" signed the Agreement, but he declined to identify the signature on the Agreement as his own. (*Id.*, No. 5.)

Claimant testified that he did not return to work in any capacity after May 6, 2011, and that he underwent surgeries on his left ankle and right knee later in May 2011. Following the surgeries, Claimant was not released to regular-duty work. Claimant also presented the medical report of David Rubenstein, M.D., who performed an independent medical examination of Claimant on February 22, 2013. Based on his examination, Dr. Rubenstein opined that Claimant had not reached maximum medical improvement but was capable of returning to light-duty work with several restrictions. (*Id.*, Nos. 6–10.)

The WCJ credited Employer's testimony in its entirety. The WCJ credited Claimant's testimony regarding his hiring and work for Employer only to the extent that it did not conflict with Employer's testimony. Specifically, the WCJ discredited Claimant's testimony that he did not sign the Agreement. The WCJ credited Claimant's testimony regarding his injury and the medical treatment and disability related to his injury. The WCJ found that Claimant had not entered into the Agreement at the time he sustained his work-related injury on May 6, 2011, and that Claimant was, therefore, Employer's employee and not an independent contractor. (*Id.*, Nos. 19–20; WCJ's Conclusions of Law, No. 2.) The WCJ also concluded that Claimant met his burden of proving that

**2.** The Agreement provides, in relevant part:

The undersigned understands that it the undersigned has been retained by Lee's Metal Roof Coatings & Painting (Pa. Contractor Regulation Number: PA 05972) as an independent contractor or subcontractor. No employer/employee relationship exists between Lee's Metal Roof Coatings & Painting and the undersigned. All payments from Lee's Metal Roof Coatings & Painting to the undersigned will be gross payments. Said payments will not contain deductions for taxes, Social Security, Unemployment Compensation, Workers['] Compensation or any form of medical insurance or benefits. The undersigned understands that the undersigned is solely responsible for all taxes applicable to the payments made to the undersigned. Furthermore, the undersigned understands that should the undersigned not wish to undertake the work without medical or other insurance in place, that it is the sole responsibility of the undersigned to obtain and pay for said insurance.

Inasmuch as the undersigned acknowledges that the undersigned is not an employee of Lee's Metal Roof Coatings & Painting, the undersigned hereby RELEASES Lee's Metal Roof Coatings & Painting from any and all claims and causes of action which arise from an employer/employee relationship.

(Agmt. at 1.)

he had sustained a work-related injury and that, as a result, he was unable to return to work as a painter. (WCJ's Conclusions of Law, Nos. 4–5.) The WCJ awarded Claimant benefits and all reasonable and necessary medical expenses. Employer appealed to the WCAB, which affirmed. Employer now petitions this court for review.[3]

■ On appeal, Employer argues that the WCAB erred in concluding that Claimant was an employee under the Construction Workplace Misclassification Act (CWMA).[4] Specifically, Employer argues that the WCAB erred in concluding that section 3(a)(1) of the CWMA, 43 P.S. § 933.3(a)(1), requires an individual in the construction[5] industry to sign a written contract *prior to* the injury in order to be considered an independent contractor. We disagree.

■ A claimant seeking workers' compensation benefits must establish that he sustained an injury in the course of his employment and that the injury resulted in a loss of earning power. *Cruz v. Workers' Compensation Appeal Board (Kennett Square Specialties),* —— Pa. ——, 99 A.3d 397, 407 (2014). "Employment status is a critical threshold determination for liability." *American Road Lines v. Workers' Compensation Appeal Board (Royal),* 39 A.3d 603, 610 (Pa.Cmwlth.2012). A claimant must prove an employer/employee relationship in order to receive benefits. *Id.*

■ Section 2 of the CWMA, 43 P.S. § 933.2, provides that for purposes of workers' compensation, the term "employee" shall have the same meaning as in section 104 of the Workers' Compensation Act,[6] which states that the term "employe" includes "[a]ll natural persons who perform services for another for a valuable consideration." 77 P.S. § 22. Section 3(a) of the CWMA provides:

> *For purposes of workers' compensation* ... an individual who performs services in the construction industry for remuneration is an independent contractor *only if:*
>
> (1) The individual *has a written contract* to perform such services.
>
> (2) The individual is free from control or direction over performance of such services both under the contract of service and in fact.
>
> (3) As to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 933.3(a) (emphases added). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(b). "'[A]n agreement of the parties to a designation of their relationship that is contrary to the employer/employee relationship established otherwise

---

3. Our review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

4. Act of October 13, 2010, P.L. 506, 43 P.S. §§ 933.1–933.17.

5. Section 2 of the CWMA defines "[c]onstruction" as the "[e]rection, reconstruction,

demolition, alteration, modification, custom fabrication, building, assembling, site preparation and repair work done on any real property or premises under contract, whether or not the work is for a public body and paid for from public funds." 43 P.S. § 933.2.

6. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 22.

is unavailing to effect a change.' " *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock),* 667 A.2d 262, 267 (Pa.Cmwlth.1995) (citation omitted).

Here, Claimant worked for Employer for several days in exchange for remuneration and did not sign the Agreement until after he was injured. Section 3(a)(1) of the CWMA is unambiguous: "[A]n individual who performs services in the construction industry for remuneration is an independent contractor *only if* ... [he] *has a written contract to perform such services.*" 43 P.S. § 933.3(a)(1) (emphases added). No written contract existed between Claimant and Employer at any point during Claimant's work for Employer and, thus, Claimant could not be considered an independent contractor under the CWMA. Although Claimant later signed the Agreement, the Agreement did not change Claimant's employment status to independent contractor because a written contract for services did not exist at the time of Claimant's injury.[7] Therefore, the WCAB properly concluded that Claimant was an employee and not an independent contractor under the CWMA.[8]

Accordingly, we affirm.

### ORDER

AND NOW, this 17th day of July, 2015, we hereby affirm the November 6, 2014, order of the Workers' Compensation Appeal Board.

7. For this reason, we also reject Employer's argument that the Agreement was merely a confirmation of an oral agreement for services that Employer and Claimant entered into prior to Claimant's injury.

8. Employer also argues that, assuming he did misclassify Claimant as an independent contractor, the WCJ should have assessed Employer administrative penalties under the CWMA rather than requiring Employer to pay

### CONCURRING OPINION by Judge BONNIE BRIGANCE LEADBETTER.

I join in the well-reasoned majority opinion. I write separately simply to note two observations. First, we are not holding, as the claimant seems to suggest, that the written contract was invalid because it was signed after he began work without some additional consideration, or that the Construction Workplace Misclassification Act (CWMA)[1] requires that a written contract be signed before one begins work in order to be deemed an independent contractor. This case does not require us to consider those issues and we have not. We simply hold that the elements required by the CWMA to establish independent contractor status in the construction industry must have been in place before the claimant suffers his workplace injury.

Second, I would point out that other relevant elements necessary to establish independent contractor status were not met here. In addition to the written contract requirement, the CWMA requires that putative employers establish, *inter alia,* that:

> (2) The individual's arrangement with the person for whom the services are performed is such that the individual shall realize a profit or suffer a loss as a result of performing the services.

> (3) The individual performs the services through a business in which the individual has a proprietary interest.

Claimant benefits. However, because Employer failed to raise this issue before the WCAB or in his petition for review, it is waived. *See* Pa.R.A.P. 1551(a); `Lewis v. Workers' Compensation Appeal Board (Disposable Products),* 853 A.2d 424, 429 (Pa.Cmwlth. 2004).

1. Act of October 13, 2010, P.L. 506, 43 P.S. §§ 933.1–933.17.

(4) The individual maintains a business location that is separate from the location of the person for whom the services are being performed.

. . . .

(6) The individual maintains liability insurance during the term of this contract of at least $50,000.

Section 3(b)(2), (3), (4) and (6) of the CWMA, 43 P.S. § 933.3(b)(2), (3), (4) and (6). It is difficult to understand how a laborer hired at $100 per day could ever be shown to satisfy the criteria in paragraphs (2) and (3), but that aside, the employer here presented no evidence that the claimant had a separate business location [paragraph (4)] or maintained $50,000 of liability insurance [paragraph (6)]. In other words, even if a written contract had been signed before the claimant's injury, he would not have been considered an independent contractor because *each* of the criteria in Section 3(b) must be proven. Employer simply did not come close to meeting its burden of proof.

Judge RENÉE COHN JUBELIRER joins in this concurring opinion.