# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Christopher Cassatt, | : | |
| Petitioner | : | |
| | : | |
| v. | : No. 2278 C.D. 2015 | |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Uninsured Employers | : | |
| Guaranty Fund), | : | |
| Respondent | : | |
| | | |
| Christopher Cassatt, | : | |
| Petitioner | : | |
| | : | |
| v. | : No. 2280 C.D. 2015 | |
| | : Submitted: August 26, 2016 | |
| Workers' Compensation Appeal | : | |
| Board (Venue, Inc.), | : | |
| Respondent | : | |


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                FILED: September 14, 2016


         Christopher Cassatt (Claimant) petitions for review of two orders of the

Workers' Compensation Appeal Board (Board) affirming the Workers'

Compensation Judge's (WCJ) decisions denying his claim petition for benefits under

the Pennsylvania Workers' Compensation Act (Act)[1] because he was an independent contractor ineligible for benefits. Because it is undisputed that Claimant was injured while performing services in the construction industry for remuneration and did not enter a written contract to perform such services as required by the Construction Workplace Misclassification Act (CWMA),[2] we reverse and remand to the Board to determine whether Claimant is a casual employee, an alternate basis upon which the WCJ denied relief.

## I.

In January 2013, Claimant filed a claim petition[3] alleging that he shattered his left heel on September 24, 2012, after falling off scaffolding that collapsed while he was working as a painter for Venue, Inc., c/o Venujopal Jolla (Jolla) (collectively, Venue).[4] Claimant also filed a claim petition for benefits from the Uninsured Employers Guaranty Fund (Fund) alleging the same disabling injuries. Venue and the Fund answered denying that Claimant was an employee at the time he

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

[2] Act of October 13, 2010, P.L. 506, 43 P.S. §§933.1–933.17.

[3] A claimant must be an employee to be eligible to receive benefits under the Act. *See* Sections 103, 104, 301(a) of the Act, 77 P.S. §§21, 22, 431; *Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 762 A.2d 328, 330 (Pa. 2000). It is a claimant's burden to establish an employer/employee relationship to receive benefits. *Id.*

[4] While Jolla's name is consistently spelled "Venugopal Golla" throughout the proceedings below, we have adopted the spelling he provided through testimony before the WCJ on October 30, 2013: "V-E-N-U-J like jars, O-P, P like Peter, A-L. Last name is . . . J like jars, O-L-L-A." (N.T. 10/30/13 at 7.)

2

sustained his injuries. The parties then agreed that the threshold issue of whether Claimant was Venue's employee at the time of the incident should first be determined, and the matter proceeded to hearing on that issue only.

Before the WCJ, Claimant testified that he worked as a painter for over 20 years as either an independent contractor or employee. When he worked as an independent contractor, he purchased his own insurance and was paid by the job. He stated that he usually received a third of the total payment up front, another third halfway through, and another third upon the job's completion.

Regarding the work he was performing when injured, Claimant testified that during the first week of July 2012, he approached Ken Rohrer (Rohrer), of Rohrer Construction Company, who was performing renovation work on apartment buildings located at 2500 and 2502 Broad Avenue, Altoona, Pennsylvania (Buildings) about his interest in painting the Buildings as a subcontractor. Rohrer told him to go talk to the Buildings' owner at a Sunoco gas station he owned in Altoona, Pennsylvania. He then went to the gas station, introduced himself to Jolla and inquired about making a bid to paint the Buildings. Jolla informed him that he was not hiring subcontractors, but offered to employ him as an hourly painter. He was told he could expect work for the next three years because there were other rental properties in need of repair. Claimant testified that he accepted the job and started working a few days later and was initially paid $7.00 an hour, but that after a week or two he received a $1.00 raise. He stated that he was required to track and submit his work hours to Jolla and that taxes were not taken out of his pay.

3

Claimant also testified that he never purchased or provided his own paint, ladders or scaffolding during his time working on the Buildings, and that although he initially painted the Buildings with his own paint brushes, Rohrer replaced them after they wore out. He stated that Jolla made decisions regarding work hours and where work was to be performed. He stated that Jolla preferred everyone to work seven days a week, but that he normally worked Monday through Friday. Sometimes Claimant ended his work week on Thursday and other times he ended his work week on Saturday or Sunday. Although Jolla also wanted everyone at work from 9:00 a.m. until 5 p.m., because Claimant did not like working until 5:00 p.m., he opted to work from 7:00 a.m. until 3:00 to 4:00 p.m.

Regarding the accident, Claimant testified that on September 24, 2012, while he was performing work on a ladder that he placed on top of scaffolding, the scaffolding broke causing him to fall approximately 25 feet. Claimant stated that as a result of falling, his right foot landed in the dirt and his left foot hit cement shattering his left heel. Claimant stated that he went to the hospital afterwards and has undergone several surgeries. Because Claimant developed an infection after one of these surgeries, he was scheduled to have his foot amputated on August 3, 2013.[5]

On cross-examination, Claimant admitted that at the time of his fall he had his own paint bag with him, with his own brushes, tape and his own harness. He

_____

[5] During the course of litigation, the surgery was performed and Claimant's left foot has since been amputated.

4

admitted that when he initially met with Jolla, he presented a business card listing his name and identifying his painting business as "CWC Painting." Claimant admitted that during this conversation, he presented Jolla with an insurance declaration page dated April 11, 2012, through April 11, 2013. Claimant stated that the insurance policy lapsed as of May 6, 2012, but that he would have purchased insurance if he performed the work as an independent contractor. He denied that he told Jolla that the insurance policy was in effect, although he acknowledged that no portion of the declaration sheet stated that the policy was canceled, inactive or lapsed. He denied offering Jolla a quote for painting the Buildings during this conversation.

In opposition to Claimant's claim petition Venue's sole owner, Jolla, testified that until his retirement in June 2013, he was employed full-time with Alcatel-Lucent and living in Piscataway, New Jersey. Jolla stated that because he wanted to invest in a business for his retirement, he purchased the Altoona Sunoco gas station in 2010 as well as the Buildings in November 2010. Jolla indicated that Dr. Prakash Potluri (Dr. Potluri), who was exclusively a business partner of the gas station's Blimpie Sub Shop, was often at this Sunoco gas station.

When he purchased the Buildings, Jolla stated they were condemned and needed renovation. He stated that he retained Rohrer Construction Company in June 2012 to complete the Buildings' renovations and that Rohrer was completely responsible for the work on the Buildings, including subcontracting work. He stated that he did not own any other apartment buildings when he was renovating the

5

Buildings, but admitted that in addition to owning the Buildings and the Sunoco gas station, he currently owns another investment property in Altoona and one in Florida.

Jolla stated that he did not have any firsthand role in enlisting Claimant and that the first time he met Claimant was when he went to the Buildings in August 2012 in response to an OSHA safety issue. He stated that he received Claimant's business card and a copy of his insurance declaration sheet from Rohrer Construction Company, that it was his understanding that Claimant was fully insured and that CWC Painting was the subcontracted entity performing the work.

He also testified that Claimant would be paid for his work in a lump sum based upon the amount of weekly work that he performed as verified by Rohrer Construction Company. He stated that he went to Claimant's home after he fell but denied that he offered to continue paying Claimant, only offering to provide Claimant with physical help such as mowing his lawn, and denied discussing workers' compensation insurance with Claimant.

Venue also presented the manager of its Sunoco gas station, Jeffrey Nace (Nace), who testified that in the summer of 2012, he observed Claimant speaking with Dr. Potluri, who worked at the Sunoco gas station's Blimpie Sub Shop. Nace stated that these conversations took place during the week and that he saw Claimant come inside the Sunoco gas station once or twice on the weekends and that he does not specifically remember Claimant talking to Jolla.

6

Claimant testified in rebuttal that he cancelled his insurance on May 6, 2012, because he did not have any other subcontractor work.[6] He stated that when he subcontracted, it was his business practice to prepare a bid sheet setting forth the work to be performed, the type of paint to be used and the price of his service. Claimant stated that he did not have a written contract with Venue.

## II.

The WCJ found that Claimant's testimony was not credible and rejected it "in its entirety" because it was replete with inconsistences. (WCJ's Opinion at 8.) The WCJ accepted as credible Jolla's testimony, noting that it was substantiated by documentary evidence. The WCJ also accepted as credible the testimony of Nace. The WCJ then denied Claimant's claim petition finding that Claimant was an independent contractor at the time of his injury. While the WCJ acknowledged that the CWMA requires an individual in the construction[7] industry to sign a written contract in order to be considered an independent contractor, the WCJ nonetheless reasoned:

---

[6] Claimant's rebuttal testimony took place at a hearing on December 11, 2013. In addition to rebuttal testimony by Claimant, this hearing was also held for the potential testimony of Dr. Potluri as well as Rohrer. At the outset of the hearing, it was confirmed that Claimant was not pursuing testimony from Dr. Potluri and that Rohrer was not testifying.

[7] Section 2 of the CWMA additionally defines "[c]onstruction" as the "[e]rection, reconstruction, demolition, alteration, modification, custom fabrication, building, assembling, site preparation and repair work done on any real property or premises under contract, whether or not the work is for a public body and paid for from public funds." 43 P.S. §933.2.

7

In reviewing the provisions of this [CWMA], it is noted that based upon the present circumstances, that [Claimant] satisfies all the provisions, with the exception that there is no clear written contract. In reviewing the historical and statutory notes associated with this Act, it is noted that it is an Act providing for the criteria for independent contractors in the construction industry and for the powers and duties of the Department of Labor & Industry and the Secretary of Labor & Industry in imposing penalties. It is noted that although there is no clear, as of yet, judicial precedent addressing this matter, it is logical to infer that the intent of this Legislation was to address the miscarriages of justice when general contractors in the construction industry would retain individuals to perform work within the general contractor[']s regular business, control and treat those individuals as employees in virtually all aspects, with the exception of contending that they were subcontractors or independent contractors for Workers' Compensation, Unemployment Compensation, overtime wages or FICA contributions. It is clear in the present circumstances that [Venue] is not a general contractor, and has not been engaged in the construction industry on his own behalf. During the original portions of the project, he had consistently retained other general contractors to perform all aspects of the work to be performed and perform all aspects of the work to be completed. As such, it is difficult to believe that the Legislature intended this Act to be applicable to a common property owner who retains a contractor to perform painting for him, whether he contracts or holds himself out as a contractor, and provides proof of insurance, as constituting an employer for purposes of Workers' Compensation.

(WCJ's Opinion at 8.)

8

The WCJ also found, in the alternative, that Claimant did not constitute an employee under the CWMA because he was a "casual employee." [8, 9] Claimant

---

[8] "[P]ersons whose employment is casual in character and not in the regular course of the business of the employer" are not covered by the Act. 77 P.S. §22. Employment is casual in nature "where it is occasional, irregular, or incidental as distinguished from regular and continuous." *Brookhaven Baptist Church v. Workers' Compensation Appeal Board (Halvorson)*, 912 A.2d 770, 777 (Pa. 2006) (quoting *Williams v. Baptist Church*, 186 A. 168, 170 (Pa. Super. 1936)).

[9] Venue contends that Claimant waived his appeal regarding the "casual employee" issue because he failed to challenge the WCJ's alternative determination in his petition for review. Claimant did not waive this issue because his petition for review was correctly limited to issues being appealed from the Board's determination, which explicitly refused to determine whether or not Claimant was a "casual employee."

In any event, Pa. R.A.P. 1513 (d) provides:

An appellate jurisdiction petition for review shall contain:

1. a statement of the basis for the jurisdiction of the court;

2. the name of the party or person seeking review;

3. the name of the government unit that made the order or other determination sought to be reviewed;

4. reference to the order or other determination sought to be reviewed, including the date the order or other determination was entered;

5. **a general statement of the objections to the order or other determination, but the omission of an issue from the statement shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record**;

6. a short statement of the relief sought; and

**(Footnote continued on next page…)**

9

appealed and the Board affirmed solely on the grounds that Claimant was an independent contractor, explicitly noting that it was not reaching the issue of whether Claimant was a "casual employee" ineligible for benefits. Claimant filed petitions for rehearing with the Board, which were denied. Claimant then filed these petitions for review.[10]

------

**(continued…)**

> 7. a copy of the order or other determination to be reviewed, which shall be attached to the petition for review as an exhibit.

*Id.* (emphasis added.)

The Official Note to Rule 1513 clarifies the amendment to the provision dealing with the general statement of objections, commenting:

> The 2014 amendments to Pa. R.A.P. 1513(d) relating to the general statement of objections in an appellate jurisdiction petition for review are intended to preclude a finding of waiver if the court is able, based on the certified record, to address an issue not within the issues stated in the petition for review but included in the statement of questions involved and argued in a brief. The amendment neither expands the scope of issues that may be addressed in an appellate jurisdiction petition for review beyond those permitted in Pa. R.A.P. 1551(a) nor affects Pa. R.A.P. 2116's requirement that "[n]o question will be considered unless it is stated in the statement of questions involved [in petitioner's brief] or is fairly suggested thereby."

[10] Our scope of review of the Board's decision is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether the necessary findings of fact are supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 799 (Pa. 1995).

## III.

On appeal,[11] Claimant contends that the Board erred when determining that he was an independent contractor because it is undisputed that he did not enter into a written contract with Venue to perform painting services on the Buildings for remuneration. In response, Venue contends that Claimant must be deemed an independent contractor ineligible for benefits under the Act because, as the WCJ reasoned, the written contract requirement established under Section 3(a) of the CWMA, 43 P.S. §933.3(a), only pertains to agreements between contractors and subcontractors.

However, since the WCJ's decision was issued, we have had the opportunity to review the written contract requirement under Section 3(a) of the CWMA. 43 P.S. §933.3(a). In *Staron v. Workers' Compensation Appeal Board (Farrier)*, 121 A.3d 564 (Pa. Cmwlth. 2015), *appeal denied*, 132 A.3d 460 (Pa. 2016), we held that a painter constituted an "employee" under the CWMA where the claimant worked for a putative employer for several days in exchange for remuneration and did not sign an independent contractor agreement until after he was injured.

Rejecting the putative employer's assertion that the claimant should be deemed an independent contractor because he signed a written contract after the injury and purportedly commemorated a prior oral agreement, we explained:

---

[11] By Order dated January 11, 2016, we consolidated these matters on appeal.

11

A claimant seeking workers' compensation benefits must establish that he sustained an injury in the course of his employment and that the injury resulted in a loss of earning power. *Cruz v. Workers' Compensation Appeal Board (Kennett Square Specialties)*, 99 A.3d 397, 407 (Pa. 2014). "Employment status is a critical threshold determination for liability." *American Road Lines v. Workers' Compensation Appeal Board (Royal)*, 39 A.3d 603, 610 (Pa. Cmwlth. 2012). A claimant must prove an employer/employee relationship in order to receive benefits. *Id.*

Section 2 of the CWMA, 43 P.S. §933.2, provides that for purposes of workers' compensation, the term "employee" shall have the same meaning as in section 104 of the Workers' Compensation Act, which states that the term "employe" includes "[a]ll natural persons who perform services for another for a valuable consideration." 77 P.S. §22. Section 3(a) of the CWMA provides:

**For purposes of workers' compensation** . . . an individual who performs services in the construction industry for remuneration is an independent contractor *only if*:

(1) The individual **has a written contract** to perform such services.

(2) The individual is free from control or direction over performance of such services both under the contract of service and in fact.

(3) As to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §933.3(a) (emphases added). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act

12

of 1972, 1 Pa. C.S. §1921(b). "'[A]n agreement of the parties to a designation of their relationship that is contrary to the employer/employee relationship established otherwise is unavailing to effect a change.'" *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262, 267 (Pa. Cmwlth. 1995) (citation omitted).

Here, Claimant worked for Employer for several days in exchange for remuneration and did not sign the Agreement until after he was injured. Section 3(a)(1) of the CWMA is unambiguous: "[A]n individual who performs services in the construction industry for remuneration is an independent contractor **only if** . . . [he] **has a written contract to perform such services**." 43 P.S. §933.3(a)(1) (emphases added). No written contract existed between Claimant and Employer at any point during Claimant's work for Employer and, thus, Claimant could not be considered an independent contractor under the CWMA.

*Farrier*, 121 A.3d at 567-68 (emphases in original) (footnote omitted).

Contrary to Venue's assertion, nothing in the CWMA's language indicates that the written contract requirement is limited to contractors and subcontractors. Section 2 of the CWMA, 43 P.S. §933.2, defines the terms "employee" and "employer" as having the same meaning given to them in sections 103 and 104 of the Act, 77 P.S. §§21, 22. Further, Section 3(a) of the CWMA, 43 P.S. §933.3(a), broadly applies to any "**individual** who performs services in the construction industry for remuneration. . . ." *Id.*

Accordingly, because it is undisputed that Claimant did not enter into a written contract with Venue and that he was injured while performing services in the construction industry for remuneration, we reverse and remand this matter to the Board to decide whether or not Claimant constituted a "casual employee" ineligible for benefits under the Act.[12]

_____
DAN PELLEGRINI, Senior Judge

---

[12] Claimant further contends that the Board erred as a matter of law in denying his petition for rehearing for consideration of after-discovered evidence that purportedly demonstrates his employment to Venue. Because we have already determined that Claimant was an employee because he did not enter a written contract as required by Section 3(a) of the CWMA, 43 P.S. §933.3(a), we do not reach this issue on appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Christopher Cassatt, | : |
|          Petitioner | : |
| | : |
|         v. | : No. 2278 C.D. 2015 |
| | : |
| Workers' Compensation Appeal | : |
| Board (Uninsured Employers | : |
| Guaranty Fund), | : |
|          Respondent | : |
| | |
| Christopher Cassatt, | : |
|          Petitioner | : |
| | : |
|         v. | : No. 2280 C.D. 2015 |
| | : |
| Workers' Compensation Appeal | : |
| Board (Venue, Inc.), | : |
|          Respondent | : |

**O R D E R**

AND NOW, this 14th day of September, 2016, it is hereby ordered that the orders of the Workers' Compensation Appeal Board dated October 22, 2015, at Nos. A14-0634 and A14-0635, are reversed and these matters are remanded to the Workers' Compensation Appeal Board for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
DAN PELLEGRINI, Senior Judge